UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEELMAN PARTNERS, LLP, *et al.*, | Case No. 2:12-cv-00198-MMD-CWH |
| Plaintiffs, | ORDER |
| v. | (Defendant Sanum Investment Ltd.'s Motion to Dismiss – dkt. no. 19) |
| SANUM INVESTMENTS LIMITED, *et al.*, | |
| Defendants. | (Defendant Jade Entertainment Group, Ltd.'s Motion to Dismiss – dkt. no. 20) |

**I.  SUMMARY**

Before the Court are Defendants Sanum Investments Ltd.'s ("Sanum"), and Jade Entertainment Group Ltd.'s ("Jade") Motions to Dismiss (dkt. nos. 19 and 20).  For the reasons discussed below, both motions are granted.

**II.  BACKGROUND**

Plaintiffs consist of four architectural engineering firms incorporated under Paul Steelman Design Group (PSDG). (Dkt. no. 27 at 2.)  PSDG maintains three offices organized under the laws of Nevada and operating principally in Nevada, including Steelman & Associates Nevada (S&A Nevada).  PSDG also maintains a subsidiary in Macau, Steelman Architecture Asia (SAA). *Id.*

On or around October 5, 2006, Defendant Jade, a real estate development company organized under the laws of Macau and operating exclusively in Macau, requested that Plaintiffs begin architectural design work for the "Jade Entertainment Complex," a resort and entertainment development in Macau. (Dkt. no. 20 at 2.)  S&A

Nevada then sent a letter of intent to Jade's Managing Director, Robert Wessels, in November of 2006 confirming that architectural work would be performed upon receipt of payment of a $150,000 mobilization fee. (Dkt. no. 19, Ex. C.) S&A Nevada received the mobilization fee payment on November 29, 2006, from Toko Kobayashi, attorney-in-fact for Jade director Tokaku Kobayashi. (Dkt no. 19, Ex. B at 2.)

On January 22, 2007, S&A Nevada emailed Wessels a standard form owner/architect agreement (the "agreement") which listed SAA as the project architect and Sanum Investments Ltd. ("Sanum"), a real estate investment company organized under the laws of Macau and operating exclusively in Macau, as the owner. (Dkt. no. 19, Ex. F at 1.) On October 24, 2007, employees of SAA met with Jade representatives in Macau to discuss the development of the project. (Dkt. no. 20, Ex. B.)

On December 12, 2007, S&A Nevada emailed a proposal, drafted and signed by SAA, detailing the scope of work to be performed and estimated costs to Wessels. (Dkt no. 1 at 4 ¶ 17, *see* dkt. no. 19, Ex. D.) Later that month, S&A Nevada sent Wessels two revised proposals incorporating edits discussed by the parties. (Dkt. no. 19 Exs. E and F.) Like the previous proposal, they were drafted and signed by SAA.

On January 23, 2008, S&A Nevada sent a revised owner/architect agreement to Wessels. (Dkt. no. 20, Ex. H.) On January 31, 2008, Wessels requested that "Steelman & Associates, Las Vegas, Nevada" be added as the architect. (Dkt. no. 19, Ex. G at 3.) Wessels also requested that the preliminary submission preparation fee be reduced to from $350,000 to $250,000. (Dkt no. 19, Ex. G at 3.)

Negotiations broke down at this time. S&A Nevada notified Wessels in an email dated January 31, 2008, that work on the project would cease until it received the entire $350,000 fee. (Dkt. no. 19, Ex. G at 1.) Plaintiffs allege that on or about February 7, 2008, Toko Kobayashi notified Plaintiffs that Jade would not honor the terms of the agreement. (Dkt. no. 1 at ¶ 2). As a result, the parties never signed the agreement. (Dkt. no. 19 at 4.)

///

Plaintiffs claim Defendants breached the agreement by failing to pay the mobilization fee, submission package fee, and the advanced payment for design work performed. (Dkt. no. 1 at ¶ 34). Plaintiffs filed their original Complaint in this Court on February 7, 2012, to recover the unpaid balance for work already performed under the agreement. (Dkt. no. 1.) On July 26, 2012, Defendants Jade and Sanum filed separate Motions to Dismiss for: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) improper service of process under Federal Rule of Civil Procedure 4; and (3) *forum non conveniens*. (Dkt. nos. 19 and 20.) Because this Court determines that it lacks personal jurisdiction over Defendants, the Court does not reach Defendants' other arguments.

### III.   LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction [under Federal Rule of Civil Procedure 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process. *Id.*  Courts must consider whether personal jurisdiction exists over each defendant separately.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Where the issue is before the court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002).  The court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. *Id.*  However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by

3

affidavit." *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quotation omitted).

Federal courts have personal jurisdiction over defendants to the same extent as the state courts "in the state in which the [federal] district court is located." *Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093, 1096 (D. Nev. 2003) (*quoting* Fed. R. Civ. P. 4(k)(1)(A)). Under Nevada's long-arm statute, a Nevada court "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the [C]onstitution of [Nevada] or the Constitution of the United States." NRS § 14.065(1). Thus, "Nevada's long-arm statute reaches the limits of due process set by the United States Constitution." *Baker v. Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000).

Due process requires that a nonresident defendant have minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 838 (9th Cir. 1986). A defendant's conduct and connection with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process is "whether the defendant purposefully established 'minimum contacts' in the forum [s]tate," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting Int'l Shoe Co.*, 326 U.S. at 316), and "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation omitted). The "essential" inquiry is whether "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Id.* at 475. These due process concerns are satisfied by a finding of either general or specific jurisdiction.

///

Plaintiffs do not argue that this Court maintains general jurisdiction over Defendants, thus the Court will only examine whether specific jurisdiction exists. A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed itself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). Plaintiffs bear the burden of proving the first two prongs of the test, while Defendants must prove that exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Below, the Court addresses each requirement in turn.

## IV.     JADE'S MOTION TO DISMISS

### A.     Analysis

Plaintiffs contend that Nevada has specific jurisdiction over Defendant Jade in this action because Jade received a letter of intent and several proposals from S&A Nevada; the parties who negotiated the agreement were located in Nevada; Jade sent a payment to Nevada; and Jade specifically requested that S&A Nevada be added as an architect to the written agreement. (Dkt. no. 27 at 5.)

#### 1.     Purposeful Availment

To establish purposeful availment, Plaintiffs must show that Jade has performed an affirmative act in Nevada which invokes the benefits and protections of Nevada's laws. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 108 (1987)). When a defendant "perform[s] some type of affirmative conduct which allows or promotes the transaction of business within the forum state" the purposeful availment requirement is met. *Sher*, 911 F.2d at 1362. For example, in *Asahi*, Justice O'Connor remarked that

purposeful availment is established by "designing the product for the market in the forum State, establishing channels for providing regular advice to customers in the forum State, advertising in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112.

An out-of-state defendant's act of contracting with a plaintiff alone does not create sufficient availment to support personal jurisdiction over the defendant. *Burger King Corp.*, 471 U.S. at 478. Instead, courts look to negotiations leading up to the contract's formation, future consequences, terms, and parties' course of dealings to determine whether a defendant's contacts are "substantial" and not merely "random, fortuitous, or attenuated." *Id.* at 479, 480 (internal quotations omitted). Additionally, the in-forum activity of a plaintiff who claims a contractual relationship with a defendant does not demonstrate the defendant's substantial, purposeful connections to the forum. *See Econ. Research Servs., Inc. v. Nw. Corp.*, No. C-07-04175 EDL, 2007 WL 4557785 at *4 (N.D. Cal. Dec. 21, 2007) ("Similarly, [plaintiffs'] statement that they 'performed 90% of [their] activities in the Bay Area,' even if accurate, describes only unilateral activity. Again, such activity fails to create personal jurisdiction over [defendants] . . . .") (*quoting McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988)).

The crux of the purposeful availment analysis here is whether Jade's contacts with Nevada result from its own actions, or resulted from Plaintiffs' interactions with Jade. *Accord Sinatra v. Nat'l Inquirer*, 854 F.2d 1191, 1195 (1988). Plaintiffs point to the letters of intent and proposals sent from the Nevada office to Jade as evidence of a purposeful availment. In doing so, Plaintiffs rely on *their* activity in Nevada to argue that Defendants availed themselves to the privileges of doing business in this forum. But Plaintiffs' actions are irrelevant to establishing personal jurisdiction over Jade. *See Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1975) ("[A]ppellee's emphasis upon the design and drafting work which went on in Los Angeles is misplaced in light of the proposition that '(a plaintiff's) performance in

California cannot give jurisdiction over (a defendant); it is (a defendant's) activity that must provide the basis for jurisdiction.'") (*quoting Belmont Indus., Inc. v. Super. Court*, 31 Cal. Ct. App. 3d 281, 288 (5th Dist. 1973)).  As such, letters of intent and proposals originating from the Nevada office emailed unilaterally to Jade do not constitute purposeful availment.

Plaintiffs also argue that the negotiations taking place between S&A Nevada employees and Wessels through email and telephone evidence Jade's purposeful availment.  Generally, conducting negotiations in a forum state constitutes an invocation of the state's laws and protections.  *Resnick v. Row*, 283 F. Supp. 2d 1128, 1139 (D. Haw. 2003).  Recognizing that many transactions take place through remote communications, the Ninth Circuit has held that physical absence of a defendant from a forum does not defeat jurisdiction.  *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (1991).  However, the use of mail, telephone, or other interstate communication does not qualify as purposeful activity invoking the laws and protections of a forum state.  *Id.*  Jade could not have availed itself to Nevada because it did not invoke the laws and protections of the state by sending emails or making phone calls to S&A Nevada.  Further, the parties never met in Nevada ─ the only in-person meeting took place in Macau.  That the employees who negotiated on behalf of Plaintiffs reside in Nevada has no relevance; again, *Plaintiffs'* relationship with Nevada does not evidence *Defendants'* purposeful availment to the state. Thus, Jade's email and telephone negotiations with S&A Nevada cannot establish purposeful availment.

Plaintiffs cite to only two other facts in addition to those addressed above in their attempt to establish Jade's purposeful activity toward Nevada: they argue that (1) Jade sent payment to a Nevada bank and (2) Jade requested that S&A Nevada be added as an architect to the agreement.  While sending payment to a forum state provides some evidence of purposeful availment, it "does not weigh heavily 'in the calculus of contacts.'" *Olivine Int'l Mktg., Ltd. v. Tex. Packaging Co.*, No. 2:09-CV-02118-KJD, 2010 WL 4024232 *4 (D. Nev. Sept. 27, 2010) (*quoting Stuart v. Spademan*, 772 F.2d 1184,

1194 (5th Cir. 1985)). Moreover, although Jade requested that S&A Nevada be added to the agreement, the addition of a state-specific party does not necessarily demonstrate a defendant's purposeful availment if the contract does not require performance to occur in that state. *See Lakeside Bridge & Steel*, 597 F.2d at 603 (holding that adding plaintiff "F.O.B. Sellers Plant Milwaukee Wisconsin" to a contract did not give Wisconsin courts personal jurisdiction over defendants where the contract did not require the plaintiff to perform its contractual obligations in Wisconsin). Neither of these facts establishes that Jade purposefully availed itself to the laws of Nevada.

An examination of the parties' actual course of dealings and future consequences of the agreement swings analysis under the first prong further in Jade's favor. Plaintiffs argue that Jade benefited from its contacts with Nevada when it acquired the architectural expertise of Paul Steelman, a Nevada resident. However, a defendant's incidental or discrete contacts within the forum do not constitute purposeful availment of the privileges of conducting business in the forum when the majority of the contract is performed outside the forum. For example, in *Sher v. Johnson*, a California plaintiff attempted to bring an action in California against his Florida-based attorney who provided representation during his Florida criminal trial. The plaintiff alleged that the purposeful availment requirement was met when the attorney accepted payment from a California bank, made phone calls to California, and sent letters to California. 911 F.2d 1357 at 1362. Yet the Ninth Circuit held that because the attorney took no affirmative action to promote his practice in California, these contacts were merely incidental to the attorney's performance in Florida and not "the deliberate creation of a 'substantial connection' with California." *Id.* The court concluded that even the three visits the defendant made to California in connection with the representation could not support

///
///
///
///

jurisdiction because they were "discrete events" attributable to a case occurring solely in Florida.[1]  *Id.* at 1363.

Jade's contacts with Nevada are discrete acts arising from activity taking place almost entirely outside Nevada, and thus do not demonstrate purposeful availment of the privileges of doing business in Nevada. The design work Jade contracted with Plaintiffs to perform occurred solely at the SAA office in Macau. Defendants produced proposals bearing the SAA office name and address in Macau. In an email sent in January 2008, SAA reassured Jade that its "team in Macau has not stopped working on the project." (Dkt. no. 20, Ex. C at 2.)  While Plaintiffs allege that some work was performed in Nevada, they have not produced any written proof. Thus, like the attorney's visits to California in *Sher*, Jade's actions toward Nevada appear to be "discrete events" arising out of an agreement which required performance entirely outside the state. *See Sher*, 911 F.2d at 1362. That the performance did not occur in Nevada undermines Plaintiffs' assertion that Jade benefited from the architectural expertise of Mr. Steelman; it is unclear how Jade would invoke the benefits and protections of Nevada law when Nevada was not the location of Steelman's performance, or of the project itself.

Nor do the contemplated future consequences of the agreement support jurisdiction in Nevada. By entering the agreement with Plaintiffs, Jade did not seek to promote business in Nevada, it sought to promote its business in Macau. Defendants did not advertise, market, or sell a product to Nevada residents. *See Asahi*, 480 U.S. at 112. *Compare Rigdon v. Bluff City Transfer & Storage Co.*, 649 F. Supp. 263, 268 (D. Nev. 1986) (concluding defendants purposely derived benefits of doing business in Nevada because they intended to expand their service to Nevada residents) *with Sher*,

---

[1] However, the court ultimately concluded that the plaintiff had purposefully availed himself to the forum state because the plaintiff executed a deed of trust in favor of his attorney to secure payment for representation. *Sher*, 911 F.2d 1357 at 1363. The court held that this act invoked the laws and protections of California because it required the application of California law and action of California courts to enforce. *Id.*

9

911 F.2d at 1362 (holding that defendants did not benefit from contacts with his California client because defendant's business took place solely in Florida, and never sought business in California). Jade employed Plaintiffs to design an entertainment development project located and marketed entirely in Macau; thus Jade did not invoke any benefits of doing business in Nevada.

For the reasons explained above, Plaintiffs have not established that Jade purposefully availed itself to Nevada in this case.

### 2. Arising Out of Forum-Related Activities

The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claim arises out of a defendant's forum-related activity. *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995). Under this test, the court must ask, but for the defendant's contacts with the forum states, would the plaintiff's claims against the defendant have arisen? *Id.* at 1500.

Plaintiffs argue that but for negotiations taking place with individuals in Nevada, work performed in Nevada by Nevada architects, and payment submitted to the Nevada office, their claims against Jade would not have resulted. (Dkt. no. 27 at 6.) But as mentioned above, it is apparent that contract performance was to occur in Macau. Most of the communications between Jade and Plaintiffs occurred in Macau; Jade represents that it regularly communicated with SAA employees (dkt. no. 20, Ex. C) (email from Toko of Jade to SAA) and the only in-person meeting took place in Macau. Plaintiffs' claims against Jade would have resulted despite Jade's limited contacts with Nevada because of SAA's extensive relationship with Jade.

Plaintiffs have not provided sufficient evidence to establish purposeful availment or a but-for relationship between themselves and Jade. Thus, Plaintiffs fail to establish specific jurisdiction enabling this Court to exercise personal jurisdiction over Jade. Consequently, the Court need not consider whether the exercise of personal jurisdiction would be reasonable. *See Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).

///

## V. SANUM'S MOTION TO DISMISSS

Sanum argues that personal jurisdiction is improper because it was not involved with the Jade Entertainment Project during the time Plaintiffs became involved. Sanum argues that it intended to purchase the property under development for the project, but dropped out of the agreement prior to closing. (Dkt. no. 19 at 3.) According to Sanum, after it exited the project, Jade purchased all shares of the property on January 23, 2006, and subsequently contacted Plaintiffs regarding project designs.[2] (Dkt. no. 19 at 3.) Sanum admits that its director, Toko Kobayashi, continued participating in negotiations after Sanum dropped out of the project, but only as attorney-in-fact for Jade. (Dkt. no. 19, Ex. A at ¶18.)

Plaintiffs argue that Toko Kobayashi was acting as Director of Sanum, not attorney-in-fact for Jade, throughout its involvement with the project. (Dkt no. 27 at 4-5.) Plaintiffs also argue that Jade's Managing Director, Robert Wessels, represented Sanum throughout negotiations. (*Id.* at 4.) Further, Plaintiffs argue that Sanum's name on the owner/agreement shows their substantial involvement with the project.

Even assuming Sanum was involved with the agreement through Toko Kobayashi's involvement and/or Wessels' representation, Plaintiffs have not established that Sanum made sufficient minimum contacts with Nevada enabling a Nevada court to exercise personal jurisdiction over Sanum. While the owner/architect agreement lists Sanum as the owner (dkt. no. 19, Ex. F at 2.), Plaintiffs concede that Wessels requested Sanum's name be removed from the agreement, and Jade's name added. (Dkt no. 1 at ¶14, *see also* dkt. no. 20, Ex. I at 3.) With respect to Wessels representing Sanum during negotiations, as discussed above, the negotiations occurring between Wessels and S&A Nevada do not demonstrate purposeful availment to Nevada because they occurred through international communications. For the same reason, Toko Kobayashi's involvement in negotiations as Director of Sanum does not

---

[2] The record is not clear about which Steelman office Jade approached, but this fact is not dispositive.

11

demonstrate purposeful availment to Nevada. Additionally, Toko's sending payment to Nevada does not evidence purposeful availment; the payment was incidental to the performance of the agreement, and did not invoke the protections of the state of Nevada. Given that Sanum conducts its business solely in Macau, Sanum's connection to Nevada by way of Toko Kobayashi and Wessels is much too attenuated to justify the exercise of Nevada court jurisdiction over it. *See Burger King Corp.*, 471 U.S. at 475.

Finally, Plaintiffs contend that the claim arose from Sanum's involvement because Plaintiffs were acting under a reasonable belief that Toko Kobayashi was representing Sanum during negotiations. (Dkt. no. 27 at 6.) However, Plaintiffs have not explained how the exercise of jurisdiction over a defendant pursuant to a plaintiff's reasonable belief comports with minimum contacts and due process standards.[3] This Court cannot exercise jurisdiction over a defendant merely based on a Plaintiffs' reasonable *belief* that the defendant was involved in the operative transaction. The Court thus concludes that Plaintiffs' claims did not arise out of Sanum's involvement with the agreement.

## VI.  CONCLUSION

This Court finds no personal jurisdiction exists; therefore, it does not reach Defendants' arguments regarding service of process or *forum non conveniens*.

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss (dkt. nos. 19 and 20) are GRANTED. All claims asserted against Defendants Sanum and Jade are DISMISSED WITHOUT PREJUDICE.

DATED THIS 21st day of March 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[3] The only case cited, *Great Am. Ins. CO. v. Gen. Builders, Inc.*, 111 Nev. 346, 934 P.2d 257, 261 (Nev. 1997), refers to apparent agent authority to enter into contracts, and does not provide support for Plaintiffs' argument.